IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ASSURANCE COMPANY OF
AMERICA,
   Plaintiff,

   v.

DEFOOR STATION, LLC, et al.,
   Defendants.

CIVIL ACTION FILE
NO. 1:09-CV-3198-TWT

ORDER

This is a declaratory judgment action arising out of an insurance coverage dispute. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 115]. For the reasons set forth below, the Court GRANTS the Plaintiff's motion.

I. Background

This litigation arises out of a builder's risk insurance policy (the "Policy") issued by Assurance Company of America ("Assurance") to Defoor Station, LLC ("Defoor") [See Doc. 18-1]. The Policy provided coverage for a building located at 1700 Defoor Avenue, Atlanta, GA 30318 (the "Property"). The Policy covered losses to "Existing Buildings or Structures" at actual cash value [See id.]. Loss to remodeling work performed during the policy period was calculated on a replacement

cost basis [See id.]. Thus, the Policy covered damage to remodeled structures at a greater value than preexisting structures.

The Policy also contains a "Concealment, Misrepresentation or Fraud" provision. This provision provided:

> This Coverage Part is void in any case of fraud, intentional concealment or misrepresentation of a material fact, by you or any other insured, at any time, concerning:
>
> 1. This Coverage Part;
>
> 2. The Covered Property;
>
> 3. Your interest in the Covered Property; or
>
> 4. A claim under this Coverage Part.

[Doc. 18-1, p. 2].

In May 2007, Defoor submitted a claim under the Policy resulting from vandalism damage to HVAC units on the Property (the "2007 Loss"). (See Pl.'s Br. in Supp. of Pl.s' Mot. for Summ. J., Ex. A, p. 190.) This claim was resolved. (Id., p. 198.) On November 11, 2008, the Property was allegedly vandalized again (the "2008 Loss"). Jeffrey Gladstein, member-manager of Defoor, reported the loss to Assurance. Defoor also retained Worldclaim, a public adjuster, to assist with the claim. On July 10, 2009, Worldclaim provided a Sworn Statement in Proof of Loss claiming $335,354.18 in damages [See Doc. 101-2]. The Proof of Loss included

claims for replacement of HVAC systems and water-damage to the Property [Id.]. All items were claimed on a replacement cost basis.

On November 18, 2009, Assurance filed this Complaint for Declaratory Judgment against Defoor and Station Realty Investments, LLC [Doc. 1]. The Plaintiff argues that there is no coverage under the Policy because the Defendants violated the "Concealment, Misrepresentation or Fraud" provision of the Policy. The Defendants filed an answer and counterclaimed for bad faith and attorney's fees under O.C.G.A. § 33-4-5 [Doc. 14].

## II. Summary Judgment Standard

Summary judgment is appropriate only when the pleadings, depositions, and affidavits submitted by the parties show that no genuine issue of material fact exists and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court should view the evidence and any inferences that may be drawn in the light most favorable to the nonmovant. Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59 (1970). The party seeking summary judgment must first identify grounds that show the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). The burden then shifts to the nonmovant, who must go beyond the pleadings and present affirmative evidence to show that a genuine issue of material fact does exist. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).

III. Discussion

Assurance contends that the Defendants violated the "Concealment Misrepresentation or Fraud" provision of the Policy. "Under a misrepresentation clause, a willful and intentional misrepresentation of material facts made for the purpose of defrauding the insurer will void the contract." Perry v. State Farm Fire & Cas. Co., 734 F.2d 1441, 1443 (11th Cir. 1984); see also Woods v. Independent Fire Ins. Co., 749 F.2d 1493, 1495 (11th Cir. 1985) (quoting Claflin v. Commonwealth Ins. Co., 110 U.S. 81, 94-95 (1884)) ("A false answer as to any matter of fact material to the inquiry, knowingly and wilfully made, with intent to deceive the insurer, [is] fraudulent."). "A misrepresentation is material if it 'might affect [the insurer's] action in respect to . . . settlement or adjustment of the claim of the insured.'" Perry, 734 F.2d at 1443 (quoting American Alliance Insurance Co. v. Pyle, 62 Ga. App. 156, 160 (1940)). "[M]ateriality is a mixed question of law and fact that can be decided as a matter of law if reasonable minds could not differ on the question." Id. at 1496 (quoting Long v. Insurance Co. of North Am., 670 F.2d 930, 934 (10th Cir. 1982)).

A. Concealed Documents

The Plaintiff contends that the Defendants withheld documents, including bank records and appraisals, that would have revealed prior misrepresentations regarding the 2008 Loss. The Defendants, however, produced those documents to Assurance

in May 2011.  (See Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 5 n.2.)  Thus, the Defendants did not violate the "Concealment, Misrepresentation or Fraud" provision of the Policy by failing to produce documents.

    B.    <u>Water Damage</u>

The Plaintiff claims the Defendants misrepresented the existence of water damage on the Property.  The Defendants submitted an invoice from the Defendants' contracting company for costs associated with cleanup of water damage.  Further, Jeffrey Gladstein, the Defendants' representative, testified that while visiting the property after the 2008 Loss, he noticed that "water had leaked in a number of places and the copper piping was missing from a number of places." (Gladstein Dep. at 192; Doc. 115-2.)

Assurance contends that these representations were false.  In support, the Plaintiff offers the testimony of William Crane, the police officer who responded to the 2008 Loss.  Crane testified that he did not notice any water damage at the Property. (Crane Aff. ¶¶ 11, 13, & 15; Doc. 115-5.)  Crane further testified that the Property appeared "dusty and dry." (<u>Id.</u>)  Although Crane did not notice any water damage, Gladstein testified that there was water damage.  Given this conflicting testimony, the Court cannot conclude as a matter of law that the Defendants misrepresented the existence of water damage on the Property.

C.  Fraudulent Documentation

The Plaintiff argues that the Defendants verified a fraudulent invoice for electrical work. The Defendants provided an invoice from Handy Electric describing electrical work performed at the Property after the 2007 Loss. William Anderson, the owner of Handy Electric, testified that Handy Electric did not create the invoice. (Anderson Dep. at 27-28; Doc. 101-10.) The Plaintiff thus contends that the invoice is fraudulent. Further, Assurance argues that the misrepresentation is material because the fraudulent estimate increased the alleged value of the Property at the time of the 2008 Loss. To the extent Handy Electric completed work at the Property prior to the 2008 Loss, the Policy covers damage to those structures at actual cash value [See Doc. 18-1]. Thus, the Plaintiff asserts that the invoice fraudulently increased the value that the Defendants may recover under the Policy.

Jeffrey Gladstein, however, testified that although Handy Electric did not generate the invoice, he created it with the help of William Anderson. (Gladstein Aff. ¶¶ 16-17.) Indeed, Gladstein asserts that "all of the numbers in the estimate came directly from [Mr. Anderson]." (Id.) The Plaintiff argues that the invoice is material because it creates an artificially inflated value of the Property at the time of the 2008

Loss.[1] The Defendants, however, contend that all numbers in the invoice are accurate and were reviewed and approved by Handy Electric. (Id.) Thus, given the conflicting testimony between Anderson and Gladstein, there is an issue of material fact as to whether the invoice includes material misrepresentations that fraudulently inflated the value of the Property.

### D. Interior HVAC Units

The Plaintiff argues that the Defendants misrepresented the condition and replacement value of the interior HVAC units. These interior units were damaged during the 2007 Loss. Assurance contends that there is no evidence that the interior HVAC units were repaired after the 2007 Loss. Specifically, the Plaintiff notes that after the 2007 Loss, Mitchell Sosebee provided an estimate for repairs to the interior HVAC units. Sosebee, however, testified that he never performed those repairs. (Sosebee Dep. at 28-29; Doc. 101-9.) Thus, the Plaintiff claims that the Defendants misrepresented the condition of the interior HVAC units at the time of the 2008 Loss.

The Defendants, however, did not testify that Sosebee performed the work described in the estimate. Rather, the Defendants testified that they could not "recall the specific name of the company or individual" that repaired the HVAC units [Doc.

---

[1] Assurance does not contend that merely misrepresenting the author of the invoice was a material misrepresentation.

101-5, ¶ 12]. Nevertheless, the Defendants assert that the interior HVAC units were repaired after the 2007 Loss. Thus, although the Defendants cannot recall who performed the HVAC repair, there is an issue of material fact as to whether the Defendants misrepresented the status of the interior HVAC units.

Assurance also argues that Sosebee's estimate inflated the loss by including replacement HVAC units that were higher quality than those damaged during the 2008 Loss [See Doc. 101-9]. Specifically, the estimate called for three phase HVAC units [See id.]. Three phase units are more expensive than the one phase units originally installed on the Property. The Defendants' request for three phase replacement units, however, was not fraudulent. Indeed, the Defendants openly submitted an estimate for three phase replacement units. Although the Plaintiff believes that such units are not covered under the Policy, the Defendants' request did not misrepresent the fact that one phase HVAC units had been on the Property previously. For these reasons, there is an issue of material fact as to whether the Defendants made material misrepresentations with respect to the interior HVAC units.

E.  Exterior HVAC Units

Assurance contends that the Defendants falsely testified that the exterior HVAC units were stolen from the Property during the 2008 Loss. In his deposition, Jeffrey Gladstein stated that "after the 2007 prior loss, equipment was left in various states

of disrepair in the building and the outdoor condensing and compressor units remained." (Gladstein Dep. at 237; Doc. 115-2.) Further, Gladstein testified that after the 2008 Loss, "the outdoor condensing compressor units were completely stolen, gone, and additional damage was done to the equipment that remained in the building that had been at least partially rehabilitated at that time." (Id.) Indeed, Gladstein repeated several times during his deposition that after the 2007 Loss, the outdoor compressing units remained. He even testified that "I think we showed you the plastic pads the [the outdoor condensing units] had been on previously when you were out there." (Id.) Finally, in their response to interrogatories, the Defendants claimed that "[a]fter the 2007 Loss, the outdoor condensing units, although vandalized, remained *in place* on the premises. During the 2008 incident, these remaining outdoor units were stolen" [Doc. 101-5] (emphasis added). Thus, the Defendants clearly testified that condensing units remaining "in place" after the 2007 Loss and were stolen during the 2008 Loss.

The Plaintiff, however, has shown by indisputable evidence that there were no exterior HVAC units at the Property on November 11, 2008. In support, the Plaintiff produced three real estate appraisals performed by McColgan and Company [See Docs. 101-6, 101-7, & 101-8]. These reports indicate that there were no exterior HVAC units on the Property after the 2007 Loss [See id.]. Indeed, the September 5,

2008 report indicates that the exterior units had been stolen and that "insurance [had] been] paid for the replacement equipment but it [had] yet to be installed" [Doc. 101-6, p. 28].

In response to the Plaintiff's motion, the Defendants produced an affidavit stating that the stolen HVAC units were inside the Property at the time of the 2008 Loss. (See Gladstein Aff. ¶ 14; Doc. 139-2.) This affidavit, however, directly contradicts the Defendants' previous written and deposition testimony. "When a party has given clear answers to unambiguous questions which negate the existence of any genuine issue of material fact, that party cannot thereafter create such an issue with an affidavit that merely contradicts, without explanation, previously given clear testimony." Cooper v. Southern Co., 260 F. Supp. 2d 1317, 1326 (N.D. Ga. 2003) (quoting Van T. Junkins & Assocs., Inc. v. U.S. Indus., Inc., 736 F.2d 656, 657 (11th Cir. 1984)). In response to written and oral discovery, the Defendants clearly testified that the exterior HVAC units remaining "in place" after the 2007 Loss had been stolen in the 2008 Loss. The Defendants contradictory affidavit cannot create an issue of material fact as to the location of the stolen HVAC units.

Further, the Defendants' misrepresentations were material. "A misrepresentation is material if it 'might affect [the insurer's] action in respect to . . . settlement or adjustment of the claim of the insured.'" Perry, 734 F.2d at 1443

(quoting Pyle, 62 Ga. App. at 160). Here, knowledge that exterior HVAC units were not stolen during the 2008 Loss would surely affect Assurance's adjustment of the claim. See Perry, 734 F.2d at 1443 (quoting Pyle, 62 Ga. App. at 160 (1940)) ("A misrepresentation is material if it 'might affect [the insurer's] action in respect to . . . settlement or adjustment of the claim of the insured.'"). Indeed, by misrepresenting the existence of the exterior HVAC units, and claiming those units were stolen, the Defendants misrepresented the amount of the loss. See Perspolis, Inc. v. Federated Mut. Ins. Co., No. 1:03-CV-2456, 2006 U.S. Dist. LEXIS 20801, at *6 (N.D. Ga. March 28, 2006) ("The amount lost in a burglary is a material fact, as that is the amount the insurance company-defendant is obligated to pay unless there is some reason to void the policy."). Thus, the Defendants made a material misrepresentation in violation of the "Concealment, Misrepresentation or Fraud" provision of the Policy. For this reason, there is no issue of material fact as to the Plaintiff's liability under the Policy.

  F. Bad Faith

Finally, the Plaintiff has moved for summary judgment as to the Defendants' bad faith counterclaim. O.C.G.A. § 33-4-6 provides that:

> In the event of a loss which is covered by a policy of insurance and the refusal of the insurer to pay the same within 60 days after a demand has been made by the holder of the policy and a finding has been made that such refusal

> was in bad faith, the insurer shall be liable to pay such holder, in addition to the loss, not more than 50 percent of the liability of the insurer for the loss or $ 5,000.00, whichever is greater, and all reasonable attorney's fees for the prosecution of the action against the insurer.

O.C.G.A. § 33-4-6. However, "where the insurer is 'justified in litigating the issue [it] cannot, as a matter of law, be liable for the statutory penalty for bad faith.'" Ware v. Nationwide Mut. Ins. Co., 140 Ga. App. 660, 662 (1976) (quoting State Farm Mutual Auto Ins. Co. v. Bass, 231 Ga. 269 (1973)). Here, as discussed above, Assurance was justified in disputing the claim under the "Concealment, Misrepresentation or Fraud" provision of the Policy. For this reason, the Defendants' counterclaim for bad faith is dismissed.

## IV. Conclusion

For the reasons set forth above, the Court GRANTS the Plaintiff's Motion for Summary Judgment [Doc. 115].

SO ORDERED, this 15 day of November, 2011.


/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge